**In re Michael DAVIS, Debtor.**

**No. 8:08–bk–04348–MGW.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 22, 2009.

Michael C. Markham, Johnson Pope Bokor Ruppel & Burns LLP, Clearwater, FL, for Debtor.

## MEMORANDUM OPINION AND ORDER ON THE PETITIONING CREDITORS' OBJECTION TO THE DEBTOR'S CLAIMS OF EXEMPTION

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

The original petitioning creditors in this involuntary chapter 11 bankruptcy case, Brian Dowling, North Shore Community Bank & Trust, and David P. Pasulka ("Creditors"), have objected to several of the Debtor's claims of exemptions—relating to a tenancy by the entireties homestead property, several retirement accounts, and various items of personal property.[1] By way of analogy, the exemption issues surrounding the homestead of Michael Davis ("Davis" or "Debtor"), located at 1934 Brightwaters Boulevard, Northeast, St. Petersburg, Florida

---

**1.** The case came on for hearing upon partial cross-motions for summary judgment and responses thereto filed by the Debtor (Doc. Nos. 177, 185) and the Creditors (Doc. Nos. 168, 187) on the Creditors' objection to exemption (Doc. No. 104) and the Debtor's response (Doc. No. 119). Based on the Court's rulings at the summary judgment hearing, and at a subsequent hearing on all remaining issues, which are articulated in this memorandum opinion, all of the Creditors' objections to the Debtor's exemptions are resolved.

("Brightwaters Home") and given a value of $1.75 million in the schedules (Schedule C, Doc. No. 88), amount legally to a perfect storm. The principal issue is whether this Debtor may claim a homestead as an exempt tenancy by the entireties property where the Debtor may arguably be ineligible to claim a homestead exemption under Florida's unlimited constitutional homestead exemption pursuant to the operation of 11 U.S.C. § 522(*o*) because the property was purchased with funds that were fraudulently transferred into a tenancy by the entireties bank account prior to being used to purchase the home. A secondary issue related to the Brightwaters Home is whether a creditor who holds separate judgments against the Debtor and the Debtor's non-filing spouse qualifies as a "joint" creditor who may execute against tenancy by the entireties property. The Court concludes that the Brightwaters Home is an exempt tenancy by the entireties property and that separate judgments cannot be artificially combined to create a joint judgment or a joint creditor. Therefore, the objection to the claim of exemption of the Brightwaters Home on this ground will be overruled.[2]

Secondly, the Creditors object to the Debtor's exemption of certain retirement assets—a Schwab IRA account and a Scudder 401(k) account with a combined value of $288,000 as listed in the schedules (Schedule C, Doc. No. 88) ("Retirement Assets"). These Retirement Assets were seized by Brian Dowling pursuant to an Illinois state court order, which was subsequently overturned on appeal based on a determination that the assets were exempt under Illinois law at the time of the court-ordered turnover. The Creditors argue that the seizure of the exempt asset, found to be in violation of Illinois law, transformed the asset from an exempt asset to a non-exempt asset. The first question is what exemption statute applies in the context of this bankruptcy case— should the Court apply Illinois exemptions or Florida exemptions? The second issue is whether the determination of exempt status by the Illinois trial and appellate courts bars this Court from re-litigating the issue under principles of res judicata or collateral estoppel. The final question is whether the circuitous journey these Retirement Assets have taken over the past several years, pursuant to orders of this Court and the Illinois courts, from the Debtor's retirement accounts, into a letter of credit, and back into the Debtor's attorney's trust account, has somehow destroyed their exempt status. This Court need not determine which exemption statute should apply. If the Illinois exemption statute applies, res judicata prevents re-litigation of the issue of exempt status. If the Florida exemption statute applies, collateral estoppel prevents re-litigation as well, because despite slight differences in the language of the Florida and Illinois statutes, the specific findings the Illinois court made to determine exempt status under Illinois law are the same findings

---

**2.** The Debtor also claimed the Brightwaters Home as exempt under the Florida constitutional homestead exemption, Fla. Const. Art. 10, § 4(a)(1), which the Creditors object to on the basis of § 522(*o*). Because the Debtor has argued that the application of § 522(*o*) would be unconstitutional under the specific facts of this case, the Court decided to first address the question of whether the homestead is exempt as a tenancy by the entireties property. Because the tenancy by the entire-

ties issues are resolved in the Debtor's favor, the Court need not determine whether the homestead exemption is inapplicable due to the operation of § 522(*o*), or further, whether § 522(*o*) is unconstitutional as applied to this Debtor. The Court also need not reach the question of whether the non-filing spouse's Florida constitutional homestead exemption would also prevent creditors from reaching the jointly owned Brightwaters Home.

this Court would have to make to determine the issue under Florida law. Finally, the circuitous but traceable journey the Retirement Assets have taken over the past three years does not destroy their exempt status. This Court cannot adopt the Creditors' argument that a creditor may seize exempt assets in violation of state law, destroy their exempt status by that seizure, and then execute against those assets that have become non-exempt through their illegal seizure. Accordingly, this objection to the exemption of the Retirement Assets will also be overruled.

Finally, the Creditors also object to the Debtor's personal property exemptions. At a hearing on all remaining issues related to the Creditors' objection to exemptions, the only coherent argument articulated for objecting to the personal property is that the amount must be limited to $1,000. Fla. Const. Art. 10, § 4(a)(2). The Court agrees that the Debtor's personal property exemption must be limited to $1,000, and the Creditor's objection will be sustained in part. Any remaining objections to the Debtor's claims of exemption are overruled.

### Factual Background

The facts in this case are largely uncontested—indeed, most of the facts are matters of public record and subject to the doctrines of res judicata or collateral estoppel, as they have been laid out in the opinions and orders of trial and appellate courts in Florida and Illinois.

#### Brightwaters Home

Michael Davis and Emily Seibel ("Seibel") were married on February 20, 2003. On that same day, Davis transferred approximately $2.2 million from his personal bank accounts to a tenancy by the entireties bank account in Florida held in the names of both Davis and Seibel. On February 24, 2003, Davis and Seibel used approximately $1.9 million of these funds to purchase the Brightwaters Home as tenants by the entirety. Seibel contributed no funds to the purchase of the Brightwaters Home. On October 30, 2007, the District Court in Tampa entered a judgment finding that the February 20, 2003, transfer of funds into the tenancy by the entireties bank account was a fraudulent transfer as to Davis's known judgment creditor, Brian Dowling, under the Florida Uniform Fraudulent Transfer Statute, Fla. Stat. § 726.101 *et seq. Dowling v. Davis*, No. 8:06–cv–562–T–27TGW (M.D.Fla. Oct. 30, 2007) (Order and Final Judgment). The relief granted in the District Court's final judgment was a money judgment against Emily Seibel in the amount of $853,153.72 plus pre-judgment interest. *Id.* at 2. The District Court also ruled, on summary judgment, that it could not impose an equitable lien on the Brightwaters Home because of the Florida constitutional homestead exemption. *Dowling v. Davis*, No. 8:06–cv–562–T–27TGW, 2007 WL 1839555 (M.D. Fla. June 25, 2007) (Order on Defendant's Motion for Summary Judgment) (citing *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001)). The District Court's final judgment has been affirmed by the Court of Appeals for the Eleventh Circuit. *Dowling v. Davis*, 295 Fed.Appx. 322 (11th Cir.2008) (unpublished). The Debtor has claimed the Brightwaters Home as exempt under the Florida constitutional homestead exemption, Fla. Const. Art. 10, § 4(a)(1), and the tenancy by the entireties exemption, § 522(b)(3)(B). (Schedule C, Doc. No. 88.)

#### Retirement Assets

In 2004, an Illinois Court entered an order requiring the turnover of amounts in Davis's 401(k) and IRA accounts ("Retirement Assets") to Brian Dowling. The order was entered at a hearing at which Davis was not present nor represented by counsel. On remand from the appellate

court, on September 12, 2006, the Illinois Court[3] determined that the Retirement Assets were exempt under Illinois law, 735 Ill. Comp. Stat. 5/2–1402 (2004), and ordered Brian Dowling to remit the principal sum collected to Davis. *Dowling v. Davis*, No. 06–ch–13419 (Ill. Cook Co. Ch. Ct. Sept. 12, 2006). The order on remand was affirmed by an order and opinion of the Illinois appellate court. *Dowling v. Davis*, No. 1–06–3042 (Ill.App.Ct. 1st Dist. Sept. 8, 2008) (Order on Appeal). In the 2008 order on appeal, the Illinois appellate court ruled that the Retirement Assets were exempt under Illinois law, and that the fact that the funds had been liquidated and turned over to Brian Dowling pursuant to a court order did not cause the Retirement Assets to lose their exempt status. *Id.* On October 10, 2008, this Court ordered that the funds ordered to be remitted to Davis by the Illinois courts be deposited into Davis's attorney's trust account pending a determination of their exempt status. (Order Granting in Part and Denying in Part Motion to Permit Deposit of Funds into the Registry of the Court, Doc. No. 11, Adv. No. 8:08–ap–451.) The Debtor has claimed the Retirement Assets, the IRA and 401(k) accounts, as exempt under Florida law, Fla. Stat. § 222.21(1), Illinois law, 735 Ill. Com. Stat. 5/12–1006, federal law, § 522(b)(3)(C), and "[a]ll other applicable law." (Schedule C, Doc. No. 88.)

## Conclusions of Law

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding to determine the allowance or disallowance of exemptions from property of the estate under 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. § 1409(a).

*Brightwaters Home*

There are three main issues to consider in determining whether the Brightwaters Home is exempt tenancy by the entireties property. First is the question of whether § 522(*o*) could prevent a debtor from claiming a tenancy by the entireties exemption. Second is the question of whether the District Court and Eleventh Circuit rulings as to fraudulent transfer prevent the Debtor from claiming the Brightwaters Home as exempt tenancy by the entireties property. Third is the question of whether the fact that Brian Dowling holds judgments against both Davis and Seibel allows him to execute against tenancy by the entireties property as a joint creditor.

■ First, it is clear that even if § 522(*o*) applies to the Debtor in this case, § 522(*o*) does not affect the ability of the Debtor to exempt the Brightwaters Home as a tenancy by the entireties property. *See Dillworth v. Hinton (In re Hinton),* 378 B.R. 371, 380–81 (Bankr.M.D.Fla. 2007). In a well-reasoned analysis, Judge Jennemann concluded in *Hinton* that Congress drafted 522(*o*) in such a way that it only applies to a claim of exemption under homestead and clearly leaves the tenancy by the entireties exemption intact. *Id.; see also In re Buonopane,* 359 B.R. 346 (Bankr.M.D.Fla.2007) (holding that § 522(p) likewise does not affect a debtor's right to exempt property under tenancy by the entireties law). This Court adopts Judge Jennemann's reasoning in *Hinton,* and holds that § 522(*o*) does not affect a debtor's claims of exemption under tenancy by the entireties.

■ The second question is what effect, if any, the District Court and Eleventh Circuit rulings in the civil case have on the Debtor's ability to claim the Bright-

---

**3.** The original turnover order was signed by Judge Madden. At the time the 2006 order was entered, the case had been reassigned to Judge Mary Anne Mason.

waters Home as an exempt tenancy by the entireties property. *Dowling v. Davis,* Appeal No. 07–15596 (11th Cir.), Case No. 8:06–cv–562–T–27TGW (M.D.Fla.). As a preliminary matter, under Florida law, "[w]here real property is acquired specifically in the name of a husband and wife, it is considered to be a rule of construction that a tenancy by the entireties is created, although fraud may be proven." *Beal Bank, SSB v. Almand & Assoc.,* 780 So.2d 45, 54 (Fla.2001) (internal quotation omitted). Where property is held as a tenancy by the entireties, "only the creditors of both the husband and wife, jointly" may attach the property—the property cannot be executed upon to satisfy the debt of only one spouse. *Id.* at 53. Were it not for the objection based on the rulings in the civil case regarding the fraudulent manner in which the property was acquired, it is clear that the Brightwaters Home would be exempt tenancy by the entireties property.

In the order and final judgment entered by the District Court, the finding was made that the transfer of $2.2 million into the tenancy by the entireties bank account on February 20, 2003, was a fraudulent transfer. *Dowling v. Davis,* No. 8:06–cv–562–T–27TGW, at 1 (M.D.Fla. Oct. 30, 2007) (Order and Final Judgment). Thus, the District Court entered judgment against Emily Seibel in the amount of $853,153.72 plus pre-judgment interest. *Id.* at 2. In an unpublished opinion entered on appeal, the Eleventh Circuit ruled that the Florida fraudulent transfer statute permits the entry of a money judgment against a transferee, and that such a judgment was appropriate given the circumstances of that case. *Dowling v. Davis,* Appeal No. 07–15596 (11th Cir. Sept. 22, 2008) ("Order on Appeal").

The Florida fraudulent transfer statute provides that a creditor may obtain, "sub-ject to the limitations in s. 726.109," the following in an action under Chapter 726 of the Florida Statutes:

> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;
>
> (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> 1. An injunction . . .;
>
> 2. Appointment of a receiver . . .;
>
> 3. Any other relief the circumstances may require.

Fla. Stat. § 726.108(1) (2008). Florida Statutes section 726.109 provides, among other things:

> Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under s. 726.108(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less.

*Id.* § 726.109(2). Where a creditor elects to seek a judgment, "[i]f the judgment . . . is based upon the value of the asset transferred, [it] must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." Fla. Stat. § 726.109(3). Reading these provisions together, it appears that creditors seeking relief under Chapter 726 may choose their remedy—either to avoid a transfer and seek recovery against the asset fraudulently transferred, or to receive a money judgment against the transferee based on the lesser of the value of the asset or the amount of the creditor's claim.

The Eleventh Circuit was faced with the question on appeal of whether a fraudulent transfer had to be "actually avoided" in order to enter a money judgment under Chapter 726 of the Florida Statutes. Order on Appeal at 2. The circuit ruled that under the statute, the question is only whether the transfer is "voidable," and that a judgment could be entered based only on the fact that the transfer into the bank account was voidable, even if it was not actually avoided. The circuit opined as follows:

> We note that the initial transfer into the tenancy by the entirety is a different transfer than the transfer of funds out of that account to purchase the homestead three days later. The mere fact that the latter transfer *was not actually avoided,* and could not be because of Florida's constitutional homestead exemption, says nothing about whether the transfer into the tenancy by the entirety was voidable.

Order on Appeal at 2 (emphasis added). Therefore, it is clear that in the civil case, no transfer was avoided. Specifically, the transfer of funds into the purchase of the Debtor's homestead, the Brightwaters Home, has not been avoided. The Eleventh Circuit has made clear that in order to avoid a fraudulent transfer, in bankruptcy proceedings as in non-bankruptcy proceedings, a lawsuit, such as an adversary proceeding, is necessary. *Havoco of America, Ltd. v. Hill,* 197 F.3d 1135, 1140 (11th Cir.1999).

The Creditors argue that the Debtor should not be able to benefit from the tenancy by the entireties exemption simply because the transfers into the homestead were fraudulent. While some of the older cases under Florida law may include language that seems to indicate that a fraudu-

lent transfer automatically destroys a tenancy by the entirety, *see, e.g., Meyer v. Faust,* 83 So.2d 847, 848 (Fla.1955); *Ohio Butterine Co. v. Hargrave,* 79 Fla. 458, 84 So. 376, 378 (1920), those cases were not decided under the current version of Chapter 726. They were decided under an older statute based on the 16th century Statute of Elizabeth, which, in prior form, stated that "[e]very ... transfer ... made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors ... shall be from henceforth ... deemed, held, adjudged and taken **to be utterly void**...." *See* Fla. Stat. § 726.01 (repealed) (emphasis added). Those cases did not establish a special rule for tenancy by the entireties property—that the exemption was automatically void wherever a fraudulent transfer occurred—but merely that if such were the case, "the conveyance can be declared fraudulent and set aside in the same manner that any other fraudulent conveyance would be...." *Ohio Butterine,* 84 So. at 378. The other cases cited by the Creditors merely refer to proceedings under Chapter 726 to set aside a fraudulent transfer into tenancy by the entireties property. *See, e.g., Thomas J. Konrad & Assoc., Inc. v. McCoy,* 705 So.2d 948 (Fla. 1st DCA 1998); *Valdivia v. Valdivia,* 593 So.2d 1190 (Fla. 3d DCA 1992); *Hurlbert v. Shackleton,* 560 So.2d 1276 (Fla. 1st DCA 1990). The transfer of assets into the Brightwaters Home has not been avoided by any court.[4] Therefore, the Debtor's claim of exemption of tenancy by the entireties as to the Brightwaters Home stands.

■ Finally, the Creditors have argued that one of the creditors in this case, Brian Dowling, holds judgments against both

---

**4.** Nor does it appear that the transfer can be avoided in any new proceeding. Setting

aside the issue of res judicata, the statute of limitations under Chapter 726 is four years.

Emily Seibel (based on the fraudulent transfer) and Michael Davis (based on the original judgment entered in proceedings in Illinois in 2002 and 2003). The Creditors argue that Brian Dowling, as a joint creditor, can execute against tenancy by the entireties property. This argument fails. Two separate judgments do not create a joint debt. *See In re Ramsurat,* 361 B.R. 246, 255 (Bankr.M.D.Fla.2006) (noting that "where spouses incur debts separately, ownership of property as tenants by the entirety prevents creditors from reaching the debtor's assets"); *see also Rogers v. Rogers,* 257 Va. 323, 512 S.E.2d 821 (1999) (holding that "separate judgments do not impose joint liability"). As there is no joint debt in this case, there is no joint creditor who has the ability to execute against tenancy by the entireties property.

*Retirement Assets*

The Debtor claimed as exempt retirement assets—a Schwab IRA account and a Scudder 401(k) account—with a combined value of $288,000 (Schedule C, Doc. No. 88). The Retirement Assets are not currently sitting in the Debtor's retirement accounts, because they were seized by Brian Dowling pursuant to the order of an Illinois court that was later found to be in violation of Illinois law. The order was appealed and the Retirement Assets became a letter of credit from Brian Dowling. When the ruling was reversed and the reversal affirmed by the Illinois appellate court, the Retirement Assets were ordered returned to Davis. Pursuant to this Court's order, the Retirement Assets are now sitting in the Debtor's attorney's trust fund. The Creditors have argued first that the retirement assets, while they may be exempt under Illinois law, are not necessarily exempt under Florida law, and that Florida exemption law should apply. The Creditors also argue that the seizure of the exempt assets, found to be in violation of Illinois law, transformed the assets from exempt assets to non-exempt assets.

The first question is whether the funds were exempt at the time of their seizure in 2004. Under Illinois law, a retirement plan is exempt if it is "intended in good faith to qualify" under the relevant provisions of the Internal Revenue Code. 735 Ill. Comp. Stat. 5/12–1006 (West 2009). Under Florida law, a retirement plan is exempt if the plan is "in substantial compliance" with the same relevant provisions. Fla. Stat. § 222.21(3)(a). Despite the slight difference in language, it appears that the inquiry that an Illinois court would go through in order to determine the exempt status of a retirement plan under the Illinois statute would be the same as the inquiry a Florida court would go through to determine compliance under the Florida statute. Therefore, regardless of which statute applies, the thing is already decided. An Illinois trial court conducted an evidentiary hearing in 2006 on the question of whether the Retirement Assets in question here were exempt under the Illinois statute at the time of the seizure and entered an order following that hearing adjudging the Retirement Assets to be exempt. *Dowling v. Davis,* No. 06–ch–13419 (Ill. Cook Co. Ch. Ct. Sept. 12, 2006). That order was appealed and affirmed by the Illinois appellate court.

■ The objection to the exempt status of the Retirement Assets at the time of their seizure is foreclosed based either on the doctrine of res judicata or on the doctrine of collateral estoppel. For res judicata to apply, a party must establish the following four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same par-

ties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001). The first two elements are clearly met in this case. As for the third element, while only Brian Dowling was a party to the suit in Illinois, the interests of the other creditors were "adequately represented by someone with the same interests," and therefore in privity. *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir.2004). The fourth element is satisfied to the extent that this is a cause of action to determine the exempt status of the Retirement Assets under Illinois law. The Creditors argue that res judicata does not apply, however, because the cause of action in this case is not whether the Retirement Assets are exempt under the Illinois statute, but whether they are exempt under the Florida statute.

 If the question is whether the Retirement Assets are exempt under Florida law, the issue is decided based on the Florida issue preclusion doctrine. In Florida, issue preclusion applies where "the identical issue has been litigated between the same parties or their privies" and the matter was "fully litigated and determined," resulting in a "final decision of a court of competent jurisdiction." *City of Oldsmar v. State*, 790 So.2d 1042, 1046 n. 4 (Fla.2001) (citing *Dep't of Health & Rehabilitative Services v. B.J.M.*, 656 So.2d 906, 910 (Fla.1995) and *Gentile v. Bauder*, 718 So.2d 781, 783 (Fla.1998)). Because the question of whether the Retirement Assets were exempt under Florida law would require an identical inquiry into whether the funds "substantially" or "in good faith" complied with the same provisions of the Internal Revenue Code, the issues have already been decided by the Illinois courts.

 Finally, in the order on appeal, the Illinois court specifically rejected the argument by Brian Dowling in that case that "because the accounts holding the exempt funds were liquidated pursuant to court order, the funds 'lost their exempt statue (sic) and are subject to turnover as cash assets.' Once again Dowling has failed to present any authority for this proposition.... That contention is foreclosed." (Order on Appeal, No. 1–06–3042, (Ill.App. 1st Sept. 8, 2008).) The Creditors have raised the same arguments in this Court—that the liquidation pursuant to court order destroyed the exempt status of the Retirement Assets. Because the Retirement Assets currently sitting in an attorney's trust account are traceable to the funds taken from the Debtor's exempt accounts in 2004, they retain their exempt status. Like the Illinois court, this Court cannot see any merit in the Creditors' argument. Therefore, the objection to the Debtor's claim of exemption of the 401(k) and IRA accounts must be overruled.

## Conclusion

The Brightwaters Home is an exempt tenancy by the entireties property, and Brian Dowling is not a joint creditor who may execute against it. The Retirement Assets are exempt in this case as they are exempt under both the Florida and Illinois exemptions statutes. The Debtor is limited to claiming $1,000 of personal property as exempt under the Florida constitutional personal property exemption, but otherwise all objections to the Debtor's claims of exemption are overruled. The Court herein incorporates its oral rulings made at the hearings on February 5, 2009, at 1:30 p.m. and March 4, 2009, at 11:00 a.m. Accordingly, it is

**ORDERED:**

1. The Debtors Motion for Summary Judgment (Doc. No. 177) is granted.

2. The Creditors Motion for Summary Judgment (Doc. No. 168) is denied.

3. The Creditors objection to the Debtors claims of exemption (Doc. No. 104) is sustained in part as to the objection based on the $1,000 limitation to the personal property exemption and is otherwise overruled.

4. The Debtor is limited to a $1,000 personal property exemption. All other claims of exemption stand.